**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PVD PHASE II, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-0836-J |
| | ) |
| SILVER ARCH CAPITAL | ) |
| PARTNERS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Plaintiff, PVD Phase II, LLC (PVDII), filed this action for breach of contract, breach of duty of good faith and fair dealing, fraud, and violation of the Oklahoma Consumer Protection Act against Defendants. Complaint (Compl.) [Doc. No. 1] at 20-22. Defendants have now filed a motion to transfer venue as to the claims against Defendant Silver Arch Capital Partners (Silver Arch) and to dismiss as to the claims against Defendant Jeffrey Wolfer. Mot to Transfer [Doc. No. 9] at 1. PVDII has filed a response and Defendants have filed a reply. Resp. to Mot. to Transfer [Doc. No. 13]; Reply [Doc. No. 14]. Having reviewed the parties' submissions, the Court finds that the motion should be GRANTED.

**I.     Background**

According to the allegations in the Complaint, PVDII is an entity created to acquire and develop land for condominiums and traditional residential homes. Compl. at 2. To accomplish that goal, PVDII sought financing from Silver Arch. *Id*. at 2-3. PVDII alleges that Mr. Wolfer is the President and CEO of Silver Arch. *Id*. at 2. After initial discussions and the exchange of documentation, including a detailed business plan, Silver Arch submitted a Term Sheet for PVDII's review and approval. *Id*. at 2-5.

The Term Sheet included several recitations, terms, and conditions, including a description of the loan and term requested, a description of the work to be done by PVDII, the loan-to-value ratio, and a provision requiring a due diligence deposit of $120,000. *Id*. at 5. The Term Sheet also included a provision stating that the parties consented to the jurisdiction of state or federal courts in the State of New York to resolve any dispute arising from the Term Sheet. Mot. to Dismiss, Ex. 3 (Term Sheet) [Doc. No. 9-3] at 4. The Term Sheet concludes with a disclaimer that states, in part, that the Term Sheet is non-binding "with the exception of the Break-up Fee, indemnification against expenses, Due Diligence Deposit, Good Faith Deposit . . . ." *Id*. The parties signed the Term Sheet on December 4, 2018. *Id*. at 6.

The parties continued to negotiate terms over the next few months as several obstacles and disagreements arose, particularly regarding appraisals, valuations, and loan ratios. Compl. at 7-8. Eventually Silver Arch sent PVDII a loan offer in March of 2019. *Id*. at 8-9. PVDII accepted the offer and submitted a Loan Application that conformed to Silver Arch's offer. *Id*. at 9.

The Loan Application, like the Term Sheet, included several provisions, including one requiring an advance fee of $134,875. Mot. to Dismiss, Ex. 5 (Loan Application) [Doc. No. 9-5] at 1. The Loan Application also included a provision stating that all disputes in connection with the application would be resolved in New York. *Id*. at 2, 7. Unlike the Term Sheet, the Loan Application did not include any disclaimer.

The requested loan never came to fruition. After a few more months of wrangling, the parties decided not to close on the loan. Compl. at 9-13. When the deal fell through, PVDII claimed that it was entitled to a refund of its due diligence and good faith deposits due to Silver Arch's actions. *Id*. at 14-15. Silver Arch refused to refund the deposits. *Id*. PVDII has now filed suit, seeking to recover the deposits and asserting bad faith and fraud claims against Defendants.

*Id*. at 20-23.  Defendants now request that the Court transfer PVDII's claims against Silver Arch to the United States District Court for the Southern District of New York and dismiss the claims against Mr. Wolfer.

## II.    Motion to Transfer

### A.  Standard of Review

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under [Rule] 12(b)(3)."  *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012) (quoting *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 497 (10th Cir. 2002)).  In resolving such motions, courts may consider evidence outside the complaint and a plaintiff may only rest on the allegations in the complaint to the extent that such facts are not contradicted by any evidence the defendant may present.  *See id*.  In this case, Defendants present documentary evidence in support of their motion, including the Term Sheet, loan offer letter, Loan Application, and an affidavit attesting to the authenticity of those documents.  *See* Motion, Exs. 1, 3-5 [Doc. Nos. 9-1, 9-3, 9-4, & 9-5].  Because PVDII's argument goes to the legal force of those documents and not their authenticity, the Court can resolve the motion on the materials currently before it.  *See id.*

### B.  Analysis

Silver Arch seeks a transfer pursuant to forum selection clauses contained in the Term Sheet and Loan Application.  Silver Arch argues that since PVDII is seeking to recover its deposits paid pursuant to the Term Sheet and the Loan Application, and since both documents include valid forum selection clauses, the Court should transfer the matter to the state identified in the clauses: New York.

When a valid forum selection clause exists, "a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). A court should only decline to transfer a case in that situation if "extraordinary circumstances unrelated to the convenience of the parties" exist. *Id*. Traditional interests such as the plaintiff's choice of forum or the parties' private interests are given no weight. *See Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir. 2019). The mechanism for transfer is Title 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

PVDII concedes that the forum selection clause in the Loan Application is enforceable but argues that the Term Sheet's forum selection clause is non-binding. PVDII has not argued that transfer is improper if both clauses are valid. Considering PVDII's silence as well as the relevant authority, the only question before the Court is whether the Term Sheet's forum selection clause is valid and enforceable. If so, the entire case should be transferred.

In determining the validity of the forum selection clause, the Court analyzes the language of the contract and applies the principles of contract interpretation. *See Milk'N'More v. Beavert*, 963 F.2d 1342, 1345 (10th Cir. 1992). "Under New York law, the terms of a contract must be construed so as to give effect to the intent of the parties as indicated by the language of the contract." *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990).[1] Only when the language of the contract is ambiguous may a court turn to extrinsic evidence of the contracting

---

[1] The Term Sheet's disclaimer states that Term Sheet is governed by New York law. Term Sheet at 4-7. As neither party disputes the validity of the disclaimer, the Court will look to New York law in construing the Term Sheet.

4

parties' intent." *Id.* A term is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987). But if the language has "a definite and precise meaning" with "no reasonable basis for difference of opinion," the language is not ambiguous. A contract is not ambiguous merely because it is inartfully drafted. *See Schindler Elevator Corp. v. N.Y.C. Housing Auth.*, 976 N.Y.S. 2d 377, 378 (N.Y. App. Div. 2013).

Here, the Court finds that the Term Sheet, specifically the forum selection clause, is not ambiguous. It is certainly true that the disclaimer provides that all terms except those specifically listed are non-binding. Term Sheet at 4. It is also true that the forum selection clause is not included in that list. *Id.* But taken as a whole, it is unreasonable to read the disclaimer as precluding the forum selection clause from having binding effect, primarily because such a reading would render the forum selection clause meaningless. Many of the non-binding terms serve a purpose in the absence of a conflict, as they set out the parameters for the potential loan. These are informational terms and have meaning and purpose even if they are non-binding. The forum selection clause, to the contrary, *only* has meaning if it can be invoked in the event of a conflict. If the parties could seek damages for a breach of the binding terms without adhering to the forum selection clause, that clause has no effect or purpose. The Court therefore determines that while the Term Sheet may have been inartfully drafted, the only reasonable reading supported by the plain language is that the forum selection clause is enforceable when a party seeks damages pursuant to a breach of a binding term.

And even if the Court were to find the Term Sheet ambiguous, it would reach the same result considering the extrinsic evidence of the dealings between the parties. *See Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990) ("[p]arole evidence is admissible to aid in interpretation of a contract only when the language of the contract is ambiguous). The parties engaged in extensive negotiations before and after the Term Sheet was executed. Compl. at 2-14. PVDII knowingly consented to jurisdiction in New York regarding the Loan Application. Loan Application at 7. It is unpersuasive for PVDII to now claim that it had no intention of resolving any conflicts related to Term Sheet in a New York court. The facts in the record indicate that the parties fully intended for all conflicts related to the Term Sheet and the Loan Application to be resolved in New York. The Term Sheet reflects that intent. The Court will therefore give effect to the forum selection clause and transfer the matter.

### III. Motion to Dismiss

#### A. Standard of Review

The plaintiff has the burden of establishing personal jurisdiction over a defendant. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The plaintiff's burden is light in the preliminary stages of litigation, requiring only that plaintiff make a prima facie showing of personal jurisdiction. *Id*. Where a plaintiff relies only on the allegations in the complaint, courts must take the well-pled allegations as true to the extent they are not contradicted by affidavits or documentation from the defendant. *Id*.

#### B. Analysis

The law of the forum state determines whether a federal court has personal jurisdiction over a nonresident in diversity cases. *See Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1279 (10th Cir. 2016). Whether personal jurisdiction exists "involves two questions – 'whether any

applicable statute authorizes the service of process on defendants' and 'whether the exercise of such statutory jurisdiction comports with constitutional due process demands.'" *Id.* (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir.2008)). Because Oklahoma's long-arm statute permits the exercise of jurisdiction to the full extent allowed by the Constitution, the question becomes whether maintenance of the lawsuit satisfies due process requirements. *Id.*; 12 OKLA. STAT. § 2004(F) ("A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States."). Due process is not offended by the exercise of jurisdiction over a nonresident defendant so long as that defendant has "'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A court may exercise either general or specific jurisdiction over a defendant. Specific jurisdiction depends "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim be related to those contacts." *Dudnikov*, 514 F.3d at 1078. (internal citation and quotations marks omitted). Here, PVDII does not appear to assert that general jurisdiction exists but relies instead on specific jurisdiction.

To determine whether a defendant has established minimum contacts with a forum for specific jurisdiction, courts examine whether the defendant "'purposefully avail[ed] itself of the privilege of conducting activities within the forum state.'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In contract cases, courts look to whether the parties "reach[ed] out beyond one state and create[ed] continuing

relationships and obligations with citizens of another state . . . ." *Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985). The existence of the contract, standing alone, is insufficient to satisfy this test. *Id*. Instead, courts look to relevant factors such as "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Benton*, 375 F.3d at 1077 (quoting *Burger King*, 471 U.S. at 479). The touchstone of the inquiry is whether the defendants "'conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there.'" *Id*. at 1078 (quoting *World-Wide Volkwagen*, 444 U.S. 286, 297 (1980)).

The contacts alleged in the Complaint fail to show the type of conduct that would cause Mr. Wolfer to anticipate being haled into an Oklahoma court. The Complaint states only that Mr. Wolfer is the President, CEO, and part owner of Silver Arch and that he sent the Loan Offer to PVDII on Silver Arch's behalf. Compl. at 2, 8. That is the sum of Mr. Wolfer's contacts as alleged in the Complaint.[2] Silver Arch's contacts are irrelevant regarding Oklahoma's jurisdiction over Mr. Wolfer, as contacts with a forum are assessed individually. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). While officers acting through the corporation, specifically directing their actions at the forum state even without visiting that state, can be subject to the jurisdiction of the forum state, the "no-imputed contacts" rule prevents courts from imputing the

---

[2] PVDII argues that the Complaint alleges that Mr. Wolfer "was directly involved in negotiations with [PVDII]." But this statement oversells Mr. Wolfer's actual involvement, as the Complaint only alleges that Mr. Wolfer sent one document to PVDII. PVDII also claims Mr. Wolfer "was involved in the transaction in his capacity as part-owner of Silver Arch." PVDII then cites to the allegation that Mr. Wolfer was a part-owner, President, and CEO. While perhaps technically true, this argument is misleading at best. The Complaint merely refers to Mr. Wolfer's status related to Silver Arch, not his involvement in this specific transaction.

contacts of a corporation with the forum state onto their employees, or even their directors or officers. *See Newsome v. Gallacher*, 722 F.3d 1257, 1269, 1276 (10th Cir. 2013).[3]

Looking only to Mr. Wolfer's contacts, it appears that he contacted PVDII once after PVDII reached out and engaged in discussions and negotiations with Silver Arch. That limited contact was to provide a loan offer that PVDII solicited and Silver Arch facilitated. The Court finds that Mr. Wolfer did not purposefully avail himself of the privilege of conducting activities in Oklahoma by that action or by virtue of his position in the company. Therefore, the claims against Mr. Wolfer should be dismissed for lack of personal jurisdiction.[4]

## IV.     Conclusion

For the reasons discussed above, the Court GRANTS Defendants' motion to transfer venue and motion to dismiss. [Doc. No. 9]. The claims against Mr. Wolfer are DISMISSED WITHOUT

---

[3] Defendants conflate the "no-imputed contacts" rule with the fiduciary shield rule, in that they argue that agents of a corporation are insulated from jurisdiction when their forum-related actions are done in their official capacity. *See Newsome v. Gallacher*, 722 F.3d 1257, 1277 (10th Cir. 2013). The Tenth Circuit discussed the fiduciary shield doctrine at length in *Newsome v. Gallacher* and expressed its doubt that Oklahoma would adopt the doctrine. *Id.* at 1277-79. Considering the fiduciary shield rule is not as "well-settled" as Defendants assert, the Court instead focuses on the "no-imputed contacts" rule.

[4] PVDII offers two alternate solutions. First, it asks for jurisdictional discovery to establish personal jurisdiction. Second, it asks that the Court transfer the entire matter to the Southern District of New York without deciding the jurisdictional issue. The Court declines to follow either suggestion. Concerning discovery, PVDII has offered nothing to demonstrate that discovery would be anything other than a fishing expedition. The Court assumes that Mr. Wolfer's contacts in Oklahoma would be related to the transaction with PVDII, meaning that PVDII would already know if Mr. Wolfer sent correspondence, made phone calls, or physically visited Oklahoma in connection with the loan negotiations. As for the transfer issue, the Court cannot transfer a matter under Section 1404(a) to a court that does not have personal jurisdiction over defendants, even if the defendants consent to suit there. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). There is nothing in the record establishing that New York would have personal jurisdiction over Mr. Wolfer, therefore the Court is without authority to transfer the claims against him to New York.

PREJUDICE.   The remaining claims are TRANSFERRED to the United States District Court for the Southern District of New York.

      IT IS SO ORDERED this 26th day of February, 2020.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE